Good morning. The first case is Jennifer Dupree and Dietrich Battle versus the Georgia Department of Corrections. Philip Bigler is here for Dupree. Howard Anderson is here for Battle. James Barrett is here for the Georgia Department of Corrections. Mr. Bigler, you may proceed. Phil Bigler Good morning, Your Honors, and may it please the Court. My name is Phil Bigler and I am here on behalf of Jennifer Dupree, the appellant in the first of the two consolidated appeals before the Court. I'd like to cover three points this morning. First, this Court should, at a minimum, review the District Court's decision for plain error because doing so is necessary in the interest of justice under the unique circumstances of Ms. Dupree's case. Second, this Court should reverse the District Court's dismissal of Ms. Dupree's enjoys sovereign immunity against such a claim. And third, even if this Court decides to affirm the dismissal of Ms. Dupree's Title V claim, it should vacate, remand, and direct the District Court to clarify that any dismissal was without prejudice as DHS concedes. Turning to the plain error issue, Eleventh Circuit Rule 3-1 permits the application of plain error review if necessary in the interest of justice. And here, even if de novo review does not apply, the plain error standard is met because, for starters, Ms. Dupree represented herself pro se in the District Court. And, of course, it's generally true that pro se litigants must follow the same rules as counseled parties, but Ms. Dupree's circumstances in particular are unusual. She suffers from multiple severe mental health conditions, which are detailed in her papers, that make proceeding pro se particularly difficult. In addition, Ms. Dupree moved for appointment of counsel twice before objections to the R&R were due. If it's a pure question of law, we review the District Court's subject matter jurisdiction de novo. That's what we said in United States v. Aguarin, right? And, Your Honor, if the Court is comfortable applying a de novo standard of review, then it should absolutely do so. At a bare minimum, the Court should apply a plain error standard. Why is there a particular, why is there an injustice or miscarriage of justice here? I mean, as you said, we hold pro se litigants to the rules, particularly the rules about objecting to an R&R all the time. Some of those litigants are incarcerated. So I know she has some disabilities, but it doesn't seem to me that that's all that unusual. So, in addition to her disabilities, Judge Pryor, she did move for appointment of counsel twice. So she recognized her need for counsel. And also, it's not as though she filed no document in response to the R&R. She, even though she continued to proceed pro se, she did file a document that was linked to the R&R on the ECF system, and that was captioned notice of filing amended complaints slash objections. So she made some effort to comply with the objections requirement. And taken together, these facts would create a unique set of circumstances that would warrant the application of plain error if the Court were not comfortable applying a de novo standard. So let's just assume we apply a plain error review. How could you meet that standard? So, in this case, Your Honor, it's particularly unique because Ms. Dupree's appeal is consolidated with the battle appeal. And the standard for whether an error is plain is whether it's plain at the time of adjudication by the appellate court, not at the time of decision by the trial court. And so, even though there was not necessarily any binding precedent as to whether the state has sovereign immunity against the Title V claim, when the district court decided that question... Yeah, I guess you're skipping ahead, I guess, a little bit and assuming he's going to win his appeal. I mean, my question is why would we rule in favor of you on that? So you're asking specifically about the sovereign immunity question, Your Honor? Yeah. So, turning to that issue, of course, the district court erred in concluding that DHS enjoys sovereign immunity against Ms. Dupree's Title V claim. The test for whether the state enjoys sovereign immunity from suit under a specific statute is, first, whether Congress unequivocally expressed its intent to abrogate that immunity, and second, whether Congress acted pursuant to a valid grant of constitutional authority. And here, DHS concedes that Congress expressly declared its intent to abrogate sovereign immunity under the ADA. So really, the only question is whether Congress' abrogation was pursuant to a valid grant of constitutional authority. And the Supreme Court in Garrett said that Congress couldn't abrogate under the ADA, right? I mean, this is the retaliation provision. It's not the substantive provision. But why doesn't Garrett, the reasoning in Garrett, apply to the retaliation provision? That's correct, Your Honor. But Garrett was with respect only to Title I, not with respect to Title V, and it left open the question of whether the states would enjoy sovereign immunity against the Title V claim. And it's clear from the Supreme Court's decision in Tennessee v. Lane that there are circumstances in which Congress' abrogation of sovereign immunity under the ADA is pursuant to valid constitutional authority. Findings in Lane concern discrimination in the administration of public programs and services, providing a pattern of Title II-type discrimination. But this is a little different here. I mean, when we look, where are the findings? Where is there in this record of any indication by Congress to address employment discrimination? So, in Garrett, the Supreme Court held that there were no such findings in the legislative record. I acknowledge that. But the reason that this case is, and Title V, is similar to Lane is because, unlike in Garrett, there's a broader set of rights at issue with respect to Title V. With respect to Title I, only the Equal Protection Clause is implicated. That's what Garrett said. Of course, in Lane, it was not only the Equal Protection Clause, but also the Sixth Amendment Confrontation Clause and the rights to access to the courts under Title II. Title V is similar because it creates a cause of action not only for individuals who are disabled, but also for the not disabled. And as a result, it must enforce rights beyond just equal protection. And because it's an anti-retaliation provision, those rights would include the right to freedom of speech and the right for redress of grievances. Those rights are fundamental. And because those rights are fundamental and they're enforced through Title V, this case is more similar to Lane than it is to Garrett. So, just for clarification, are you proceeding under an actual violation theory or a prophylactic theory? This would be under a prophylactic theory, Your Honor. Can I see that another time? All right. Thank you, Mr. Bigler. You've reserved some time for rebuttal. We'll hear from Mr. Anderson. Thank you, Mayor of the District Court. My name is Howard Anderson. It's been my privilege to be appointed to represent Mr. Battle here before you. As you know from the briefs, there are three issues, I think two of which are largely uncontested. The first issue, which is where all the action is in this case, is about the Eleventh Amendment as to Title V. But issues two and three I'll address just very briefly. I think the State and I agree on issue two that for any claim in which the Eleventh Amendment applies, then the judgment should be without prejudice. And so that would include the Title I claim that Mr. Battle brought, and I think that the District Court's judgment should have been clear that it was dismissing that claim without prejudice. Then if there are no claims in the Court's original jurisdiction below, then there is no statutory basis for supplemental jurisdiction. And so then all the State claims should be dismissed without prejudice. The District Court purported to have a merits adjudication with those, particularly the Georgia State whistleblower claim. As to the claim for sovereign immunity, I'd just like to point out that, you know, as I understand the Eleventh Amendment, at heart it's about comedy between the State and the federal government. And what we have here is we have a person who's trying to get to federal court to complain about his rights. And I don't think that it's in the interest of comedy for the State to be able to intentionally or otherwise discriminate against someone who's trying to go to the federal government for help. And by saying that there's sovereign immunity here, that allows the State to intentionally discriminate, and I don't think that that advances the underlying principles behind the Eleventh Amendment. And so, again, that's different than Title I, where we're talking about, you know, is the person actually subject to these things or not? But here it's we're trying to get to the courthouse doors. And so Congress said in Lane that the courthouse doors must be physically accessible to the disabled. And as I say in the brief, it would be a hollow right indeed if, as you're walking up the steps to the federal courthouse in Atlanta, that the State can fire you for doing that. Can I ask you a question about the standard of review? So correct me if I'm wrong, but so I understood the sort of the procedural history of this in the district court to be that the State moved to dismiss, and your client, representing himself pro se, did not oppose on sovereign immunity grounds, and so it was dismissed on sovereign immunity grounds. And so I sort of saw in this case a similar question as to in the other, you know, joint case about how we evaluate an argument that was not preserved. So could you just address that? Sure, Judge. And so, again, I think there's something special about jurisdiction, and we know for the Supreme Court case law that Do I have the procedural history right? Is that right? Yes, Judge. I don't know that my client was particularly sophisticated below. Sure, yeah. And so if I can continue, I'm going to have a little bit of time here. But because we're talking about subject matter jurisdiction, I don't think you can waive or consent to jurisdiction that's not there. And so that might be more of a problem on a Title I claim here, but because we're talking about was there jurisdiction to even act, I don't think you can waive by not objecting. Right. So let me just ask you one follow-up question on that. So I agree you can't create jurisdiction by waiver, but can you waive arguments that would support jurisdiction? So in other words, you know, let's just assume this is sort of a strange case, but let's assume it's like a diversity jurisdiction case. Couldn't a plaintiff just fail to identify that the defendants are citizens of, you know, states that are diverse from the plaintiff and therefore get dismissed when had they actually identified the diverse citizenship, they would not have been dismissed? And if they fail to do that, I mean, wouldn't that be something we'd have to review on plain air or something? I mean, wouldn't that be something that a plaintiff could waive? Well, I don't know that that's quite the same because I think it would be the issue of there's not even a statute that allows for jurisdiction as opposed to how the statute applies. And so for Mr. Battle's case, I think it's, well, we have a merits, the district court below entered a merits judgment. And so we have to figure out, is he allowed to enter a merits judgment? And he can only do that if he actually has jurisdiction. And so this would be different if this came before the court on a dismissal without prejudice, perhaps, where the court said that I'm not exercising jurisdiction. But here, Judge Treadwell exercised jurisdiction to adjudicate it on the merits. And so what we're trying to decide is, did Judge Treadwell go beyond where he was supposed to go or not? And that's what the state is saying, is that there's no Eleventh Amendment jurisdiction, so he should not have been allowed to make a merits adjudication at all, if that answers your question. Okay. Thank you, Judge. All right. Mr. Barrett. Thank you, Your Honor. May it please the Court. This case begins and ends with Garrett. In Garrett, the Supreme Court held that there was no historical pattern of employment discrimination by states against the disabled. So it held that in this context, Congress lacks authority to enact Section 5 remedial legislation. And even if there were some history, if states are immune from discrimination claims, they must also be immune from retaliation claims designed to protect those merely protesting discrimination. Nor is there some other pattern of constitutional violations by states that could support abrogating state sovereign immunity from Title 5 retaliation claims. Under the three-part Bernie v. Flores test, plaintiffs tried to broaden the analysis by relying on the First Amendment and the Due Process Clause, but Congress identified no instances of state employers infringing on disabled employees' exercise of either right. No history of unconstitutional retaliation means no Section 5 remedial legislation. And I think it's also important to point out that Congress, looking at the text of the statute, did not intend for the retaliation provision to be addressing some other series of constitutional violations. It's very clear from the wording of the statute that focuses exclusively on exercising the rights provided by the ADA that Congress was concerned that by passing the ADA there would be negative responses to that and wanted to foreclose that by creating this additional prophylactic remedy on top of the prophylactic This case is not about whether Congress had constitutional authority to pass the ADA. Congress applied the ADA to the states through the Commerce Clause. The federal government can enforce the ADA directly against the states. State employees can seek injunctive relief against state officials. And so sovereign immunity in this situation is stopping Congress only from creating the ability for individuals to bring private damages suits against the states. Can I ask you a question about the standard overview? I mean, what's your position on how we evaluate the two claims? So on the Dupree side, I think it's clear that the issue here is whether there was a waiver of the right to appeal. So there's a predicate question to what the court's approach is to assessing the legal question. And under the federal appellate rules, we don't even get to plain error unless there's some kind of very unique situation in the interest of justice that requires even considering the case. I don't think, I think there are lots of Why wouldn't pro se status and disability together apply? Your Honor, I think this case isn't unique, particularly just looking at the record of this case. I think Dupree was able to review a lot of the law, file a lot of the different necessary filings in the district court. The issue was even the filing that the district court struck from the record was not addressing the arguments about the federal claims. Mr. Dupree was focusing on the state claims. So the issue in this case is not someone who was so unable to engage with the court system that they needed extra support. This is more sort of just the traditional pro se litigant case where the rules are clear and the rules weren't followed. And I think it would be fair to apply the rules in this case. What about battle? Your Honor, in battle, I do not remember off the top of my head whether the, how specific battles responses were to the sovereign immunity arguments. This court does consider pro se arguments more with more leniency. And this court is obligated to assure itself of its own subject matter jurisdiction. So if we're in the case of considering these claims, I think it would be appropriate for this court to reach the sovereign immunity question. And if there are no further questions. Yeah, I have a question. So it seems to me that under Title I in Garrett, and this is the same with other federal statutes, we generally take a categorical approach to determining whether a statutory exercise of Congress' 14th Amendment Section 5 authority is congruent and proportional. But then with respect to Title II in Lane, the Supreme Court took an as-applied approach. So how do we know which of those two approaches is appropriate for Title V? I think, Your Honor, that's correct that there was sort of a change in Lane. This was prominent in the court's consideration of Lane. Should we be considering this as a statute as a whole or should we look at these in more of a categorical approach? And the court, I think, made clear in Lane that the appropriate approach to Title II, because of the nature of how it was written, to cover a variety of different categories of areas, that it was appropriate to assess that on a situation-by-situation basis. I think Title V is similarly written. Title V really isn't an independent provision. It says no retaliation, but we're not going to say much further than that. Go back and look at each of the appropriate titles to consider what the, how the litigation should play out, what remedies should be available. So I think because Title V is structured in a way that it builds on and really is looking back to the core titles, that it should be treated in the same way that the titles themselves are treated. And that's what the other circuit courts to have addressed the issue have done. The Ninth Circuit in Demske said Title V is not freestanding. Let's consider it. The Ninth Circuit really didn't have a lot of analysis in that case, though. Would you agree? I would agree. I think this is sort of a, this particular aspect of the question, whether to consider Title V on its own or in line with the other titles, is pretty clear-cut because of the language of the statute. I think the Fifth Circuit made that sort of clear analysis in its block decision, too. It said Title V is not a freestanding provision. It's the miscellaneous provisions for the ADA. This is one section of the statute that says we also don't want to allow retaliation. So I think it would be appropriate to provide more analysis than the Ninth Circuit and the Fifth Circuit did, but I think the statute matches up with the analysis that those courts did. So I'm glad you mentioned the other circuits. So I had that the Ninth and Fifth had resolved this. Are there any other circuits that had resolved this issue? Not the Ninth. Okay. And the Ninth and Fifth both resolved it to say that there was sovereign immunity, right? Correct. What's your response to the appellant's argument that anti-retaliation is fundamental to access to courts and vindicating rights? I think when Congress was passing the ADA, they recognized that an easy way to get around discrimination is retaliation. So by providing this remedy, they wanted to make sure that those who were interested in discriminating wouldn't be able to find some other way to passing this uniform legislation. It was perfectly appropriate for it to recognize that retaliation is not uncommon in this area and to impose this additional protection. But I think for the sovereign immunity analysis, what we're trying to consider is whether Congress was addressing a particular pattern of states engaging in this retaliation against individuals who, before the ADA, individuals would have been bringing equal protection claims, that sort of thing, in court. So if there was evidence that states, even if they weren't discriminating, were targeting employees who were bringing equal protection claims, firing them, demoting them, that sort of thing, then it would have been appropriate for Congress to not only think ahead and consider what could happen and provide a prophylactic remedy, but also abrogate state sovereign immunity because of what states were doing. And they're just, if we look at the congressional record, if we look at the long appendix in Garrett, there just is no evidence at all of states having this sort of punitive attitude towards individuals exercising their constitutional rights. Thank you, Mr. Barrett. Thank you, Your Honors. Mr. Begley, you've reserved some time for rebuttal. Just a couple of points, Your Honor. First of all, with respect to the waiver issue or the purported waiver, as I mentioned, this case is particularly unique, and a finding that Ms. Dupree did not waive her appeal could be incredibly narrow because not only is she requested the appointment of counsel, and she did file a document in response to the R&R that was expressly linked to the R&R. So she made an effort, and it was styled in part as objections. So she made an effort to object to the R&R. The second point is, of course, the Ninth Circuit decided the Demski case in 2001, which was before the Supreme Court's decision in Lane, which, as my friend on the other side acknowledged, changed the landscape of the abrogation of sovereign immunity to some extent. And then the third point, Your Honors, is that in any event, no matter what happens with the Title V ADA claim, this Court should vacate the District Court's decision and remand with instructions to enter a new order acknowledging that any dismissal of the ADA claims would be without question. Can I ask you a question about that? So I agree that it should have been without prejudice. I think that's pretty clear. But would it be satisfactory if we just said in our opinion that it was without prejudice, or we construe it to be without prejudice? So, Your Honor, that is a possibility, but it would be preferable to vacate and remand from a taxation of cost standpoint. Oh, from the taxation of cost standpoint. I was going to ask you, practically, what's the difference, and so that's the difference. Okay. Thank you. All right. Thank you, Mr. Biegler. Mr. Anderson? Thank you, Your Honor. Just following up with what the State said, I certainly agree with them when they said it was, quote, perfectly appropriate, close quote, for Congress to want to have an anti-retaliation provision. And so I would say given that concession, not to put words in their mouth necessarily, but it sounds to me that if the plaintiff in Lane had been a government employee, I think that the State would agree that Lane could not have been fired for complaining that he couldn't get to the State courthouse because that's part and parcel of his Title II claim. And I didn't hear any reason from the State, given as to how it advances comedy, to say that if the person... I think the issue is the State doesn't want to have to pay you any money. I think that's the issue. Well, I'm a Republican, Judge. Well, not you. Not you, you. Not you, you. But your client, right? I mean, that's what the State is arguing. They're arguing, look, the sovereign immunity bar says that we don't have to pay you any money. And that's the comedy, is that Congress can't make us pay other people money. But the upshot is, you know, Title I is about do you have to pay money for just making these claims. Title V is you're trying to get to court to present it to the federal government or here to the EEOC for the federal government to investigate. And I think by saying that the State is allowed to retaliate, you are discouraging people from going to the EEOC, from talking to the federal government, to report these items that Congress has said as a matter of national policy, we want every employee... Can't you... And actually, I really appreciate the fact that you both have taken this case. Couldn't you sue, not you, your client, couldn't your client sue and say I want an injunction, I want some kind of injunctive relief against the official for the State government who has fired me in a retaliatory manner, so I want my job back. Sovereign immunity doesn't preclude that kind of ex parte young suit for an injunction, does it? If I can continue, Your Honor. May I? Thank you, Judge. So in theory that might work, as to my client in particular, his disability has progressed to such an extent now that he actually has a pending Social Security disability claim, and so injunctive relief is hollow relief for him because he can't actually work today.  All right. I thank you, Your Honor. Well, as you indicated, Mr. Anderson, you and Mr. Bigler are taking this case pro bono pursuant to an Agenda 5 appointment, and we thank you, the court thanks you for your service.